# EXHIBIT 1
## Part A

**Exhibit 1, Part A**
*United States v. Shiwei Yan*
**15 Cr. 706 (VSB)**
**Letter from Ms. Yan and Letters of Support from Ms. Yan's Friends & Family**
**(organized alphabetically by last name)**

| NO. | DESCRIPTION |
|:---:|:---|
| 1 | Letter of The Honorable Neil Anthony Brown QC |
| 2 | Letter of Sharon Content |
| 3 | Letter of Robert Dean |
| 4 | Letter of Bruce Dover |
| 5 | Letter of Ayman Faheem |
| 6 | Letter of Ian Hutchinson |
| 7 | Letter of James A. Kelly |
| 8 | Letter of Thomas Keneally |
| 9 | Letter of Zorica McCarthy |
| 10 | Letter of John McDonnell |
| 11 | Letter of Isobel (Zoe) Morrison |
| 12 | Letter of Peter Norton |

# 1. Letter of The Honorable Neil Anthony Brown QC

# THE HON NEIL BROWN QC
## ARBITRATOR * MEDIATOR

Greens List
Owen Dixon Chambers
205 William Street
Melbourne VIC 3000



25 February 2016

*www.neilbrownqc.com*

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square

New York, NY 10007

Re: <u>United States v. Shiwei Yan</u>
15 Cr. 706 (VSB)

Dear Judge Broderick:

This character reference is provided on behalf of and in support of the above named Shiwei Yan whom I know as Sheri Yan and whom I understand is before your court awaiting sentencing.

By way of introduction, I am an Australian lawyer in practice and I presently work in arbitration and mediation. As well as other international arbitration panels, I am on the panels of the American Arbitration Association and the National Arbitration Forum and have been appointed by those bodies to preside on arbitrations, in the former case in commercial matters and in the latter case on internet domain name disputes. I was admitted to practice in 1964 and have remained in practice since then, except for various periods when I was a Member of the House of Representatives in the Parliament of Australia.

In addition, I should say that as a former Minister in the Federal Government of Australia in charge of departments including the Attorney- General's department[1], I do not give references lightly, particularly in criminal matters and I do so only when

---
[1] My CV may be seen at www.neilbrownqc.com

1

I am convinced of the decency and character of the person concerned. In the case of Ms Yan I am more than happy to give her this reference.

I give this reference willingly and enthusiastically as I have known Ms Yan for many years and have always found her to be of good character.

I have been trying to reconstruct an understanding of the time when I first met Ms Yan and my belief is that it was around 1991-2 that I first met her. However, I had known her husband, Mr Roger Uren, a distinguished Australian diplomat, much earlier than that and in fact during the 1960s and from then until the present time. I have always regarded Mr Uren and, since I first met her, Ms Yan, as close personal friends and have stayed with them in their various residences in Australia and overseas. I also knew Mr Uren's parents and other members of his family.

After meeting Ms Yan, I subsequently met and spent time with her and with Mr Uren on many occasions in Beijing, Canberra and Melbourne. During this time I was aware that she was engaged in business activities by way of representation, consultancy and advice. During my discussions with Ms Yan I formed the opinion that she would act properly and lawfully at all times and would never engage in any form of impropriety.

I had the opportunity to see how she conducted herself when, after I left the Parliament, I was associated with her in a proposal for the expansion of the hospital at Anshan, a city in North Eastern China. I worked with Ms Yan on that project for several months in 1992 and visited Anshan with her, where we discussed the proposal and inspected the establishment with the hospital authorities and others and also pursued it back in Australia. During this time, particularly in Anshan, I was in a position to observe Ms Yan's work and there was never any sign or hint that she was conducting herself in any manner other than in accordance with the highest proprieties. The project did not proceed, which I concluded was because it was too early for the hospital to expand into a commercial venture with the financial aspects necessarily involved and that it probably should be deferred. But there were no recriminations from anyone concerned and certainly no complaint about Ms Yan's conduct.

The impression I formed of Ms Yan's propriety was consistent with the impression of her conduct that I had already formed and which was subsequently confirmed by observing her and hearing about various projects she had on foot. I have no doubt

that at all times she was committed to acting within the law and the principles of commercial and financial propriety.

I therefore trust that this reference for Ms Yan will be accepted as it is intended to be, namely that her good character, to which I can attest , will be taken into account to alleviate the sentence contemplated by this Honourable Court. It is of course entirely a matter for Your Honour, but I would respectfully suggest, based on my knowledge and observations of Ms Yan, that she would respond constructively to any leniency in her sentence that could be granted to her.

I would like to thank Your Honour for reading this letter and considering its contents in the course of your deliberations.

Respectfully submitted,

Yours sincerely,

The Honourable Neil Anthony Brown QC

# 2. Letter of Sharon Content



CHILDREN OF PROMISE, NYC

June 13, 2016

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re: United States v. Shiwei Yan
15 Cr. 706 (VSB)

Dear Judge Broderick:

I am submitting this letter on behalf of and in support of Sheri Yan. My name is Sharon Content and I am the Founder and President of Children of Promise, NYC (CPNYC), a community based organization in Bedford Stuyvesant, Brooklyn. The mission of our organization is to embrace the children of incarcerated parents and empower them to break the cycle of intergenerational involvement in the criminal justice system. I am responsible for managing and coordinating all program operations-including planning and program development, maintaining partnerships with external organizations, building community support, fundraising, supervising staff and fulfilling contractual and fiscal responsibilities.

Prior to founding CPNYC I worked for over ten years within the nonprofit sector for various organizations focused on addressing the needs of youth residing in high crime, low income communities. In the five years prior, I was as a Finance Analyst at a major Wall Street investment firm where I developed extensive experience in Fiscal Management and Accounting. I earned a Bachelor of Arts from Howard University.

I initially met Ms. Yan earlier this year in January 2016 after she expressed interest in volunteering for CPNYC. After her first visit to CPNYC, she became very interested in and impressed by the children's artwork which was hung around our facility. She began volunteering and dedicating hours of her time and talent in the children's art classes and at the Saturday Resource Center where she supported academic support of our participants. While her English was difficult for some of the children to understand Sheri established relationships and friendships with several children. She was so inspired by the mission of the organization she also enlisted the support of her daughter



Victoria and brought her friends on site visits. Victoria also volunteered in art classes, the Saturday Resource Center and contributed her photographic talents to document our work. Lastly, Sheri has also started developing a plan so that CPNYC can host an annual gala to showcase on a wider stage the work CPNYC has accomplished for our participants.

In a short time period of time Sheri and her daughter, Victoria have become some of our strongest advocates and critical members of the CPNYC team. Both have made meaningful contributions to the organization. Together they came up with an idea for an art book titled, *Art From the Heart*, which showcases the visual art, performing arts and writing created by CPNYC participants. Sheri and Victoria have been working and developing this book for nearly five months, and it is now ready to be printed. Sheri, Victoria and CPNYC Staff plan to publish an art book twice a year to celebrate the creative achievements of our participants who have faced so much pain and hardship. In order to celebrate the launch of the art book, Sheri has planned, coordinated and sponsored a luncheon.

The friendship Sheri and I have established is very special in that she understands the mission of my organization and how incarceration gravely impacts the children and families of imprisoned individuals. She has admitted to doing wrong from the first day I met her and committed herself to rectifying the situation as best she can. She accepts full responsibility for having done things she should not have, which she acknowledges was wrong and wholeheartedly regrets. Sheri is prepared to move forward with her life in raising her daughter, caring for her elderly parents and impacting the community in a positive manner. Sheri serving time in prison would be detrimental to all concerned. She has so much to offer society as demonstrated in the love, generosity and courage she has displayed over the past few months. I consider Sheri to be a true friend and will support your decision and the impact it will have on her life going forward.

I would like to thank you Judge Broderick for reading my letter and considering its contents. I ask for your leniency in sentencing Sheri Yan as she has so much to contribute to her family, friends and community.

Respectfully Submitted,

Sharon Content
Founder & President
Children of Promise, NYC

# 3. Letter of Robert Dean

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Court House
40 Foley Square
New York, NY 10007

Re:    United States v. Shiwei Yan
15 Cr. 706 (VSB)

Dear Judge Broderick:

I am submitting this letter on behalf of and in support of Sheri Yan.

I am an aerospace industry executive and a veteran of that industry, a former CEO
of two companies, and a former senior US government official. I graduated from
Brandeis and Harvard, and I hold a PhD from the Korbel School of International
Studies at the University of Denver.

I first met Sheri Yan in 1997 when for about an eighteen month period she
worked as a consultant to assist my company, Ball Corporation, in China. She
showed herself to be an effective, hard-working, impeccably honest, and loyal
contract consultant. She was highly respected and liked by her Chinese
colleagues, something that helped the company move forward in its business
relationships.

Sheri has a remarkable and accomplished family. Her husband was a distinguished
member of the Australian intelligence services. Her daughter is a standout
student at Wellesley College and, like her mother, has a natural instinct for
service to humanity, and for beneficial causes that really help less fortunate
people. Her aged parents suffered mercilessly during the brutal Chinese cultural
revolution; during that lengthy period, her family was forcibly separated, and
Sheri was obliged to serve in the Red Army. Following her parents rehabilitation,
her father developed into one of China's better-known poets and artists. But I
believe the parents still depend on Sheri for financial support.

I have read the press reports about Sheri's case. I am sure that she feels enormous remorse and accepts responsibility for her conduct. I want to state that I have always regarded her as a woman of the highest honor, character, and personal courage.

To substantiate that assertion I want to add that earlier in life Sheri faced extreme hardship. While in her twenties, she left family and country behind to come to the United States. She did not speak English. She had no money. She really had nothing but determination. She found her way to Washington where she worked for a long time as the caregiver for an elderly woman who became her dear friend and confidante. Sheri cared or and sustained this woman in another characteristic show of loyalty, grace, and warmth.

I believe if this woman were alive today she would be Sheri's strong and vocal supporter because she knew her so well. I believe she would say that Sheri is exactly the kind of person this country should want and welcome. And I also believe that, like me, she would say that Sheri merits the utmost leniency from the Court.

Thank you for considering my thoughts. I know that , despite the hardships Sheri may now face, she will emerge from this experience as the fine person she has always been, and that any leniency that can be shown her will be deeply felt.

Sincerely yours,

# 4. Letter of Bruce Dover



July 7, 2016

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

> **Re:    United States v. Shiwei Yan**
> **15 Cr. 706 (VSB)**

Dear Judge Broderick:

I wish to submit a letter on behalf of, and in support of Sheri Yan – a person whom I have known over a period of 10 years. During that time I have engaged Sheri Yan as a consultant, worked alongside her a colleague on a number of projects and socialized with her and her immediate family on numerous occasions.

My name is Bruce Dover. I am currently Managing Director or DCI Media Group, an international media consultancy group whose clients include Time Warner, CNN International, Bloomberg, Al Jazeera, MTV and the Australian Broadcasting Corporation. I was previously the CEO of Australia Network – the Australian Government's international broadcasting division and before that, Managing Editor of CNN International.

I was first introduced to Sheri Yan around July of 2006 in Beijing, China on the recommendation of former Australian Prime , Mr. Bob Hawke, who was an acquaintance of hers. At the time, I was CEO of Australia Network, the Australian Government's international satellite broadcasting service that was then seeking permission to re-broadcast the channel to Chinese audience's inside the country. Having checked her credentials with a number of respected authorities on China, I engaged Sheri and her company to lobby the Chinese Government on behalf of Australia Network to gain official access to the highly protected Chinese television market.

In my view, Sheri, during the period of engagement by Australia Network, worked assiduously on behalf of the channel to further our interests in China. She appeared to be extremely well connected within the local political and business community and was able to arrange very high level meetings between the relevant Chinese regulatory authorities and myself, and my Chairman – Mr. Maurice Newman, former head of the Australian Securities Exchange (ASX) in Beijing.

From 2007 to 2011 Sheri was engaged on a retainer basis by Australia Network To my knowledge, Sheri always conducted herself with probity and concern for our

interests. She exhibited a great deal of initiative and energy and appeared to be driven by a desire to help instigate better understanding and improved relations between the Australian and Chinese people. She had during this time concurrently established the Australia Business Link China to foster and develop trade and investment between the two countries.

During 2012 and early 2013 I worked along side Sheri providing consultancy services to a number of Chinese media companies that we seeking to extend their operations outside of China and reach new Western audiences seeking a broader understanding of Chinese culture and the opportunities presented by the country's "opening up". In my personal dealings with her, Sheri was fair and transparent.

During this period , both inside China also in the West, I spent some time with Sheri Yan and her family socially and came to be aware of the enormous priority she placed on the care and welfare of her elderly parents and of the devotion and loyalty she demonstrated to her husband Roger and daughter Victoria. She appeared to take on the role of "chief provider" for her immediate and extended family.

Sheri brought a great deal of enthusiasm and energy to all of the projects we were jointly involved in. However, in my opinion, Sheri had something of a blind spot, in that despite her exposure to Western culture, there was a significant naivety about the way the Western legal system operates and how differentiated it is from the Chinese environment where she operated so effectively. In China, there is a vast "grey zone" where one can operate and conduct business in a way that is neither legal nor illegal – until the Communist hierarchy dictates a policy directive one way or the other. I attempted on a number of occasions to explain to Sheri that in the West, the legal system had very little room for "grey" and it was very much a system of "black or white" - things were either legal or illegal. More directly, I attempted to have her understand that practices, which might be condoned inside China, might be severely frowned upon in a Western context.

Sheri was a very skilled and successful networker inside the Chinese political and business landscape. It was my observation following meetings between senior leaders and her clients there was, as is common practice in China, an exchange of gifts. Sometimes, where a Chinese businessperson was seeking to impress or flatter their visitors, gifts were made that might be described as "overly generous". This, in my experience of over 3 decades working in China is a common practice even between Chinese business people and senior Chinese political leaders. In effect, it is partly showing off or demonstrating one's wealth and therefore relative success, but also about paying homage to a leader of official seemingly more powerful and influential whose mere presence has provided the "giver" with increased " face" or *mian zi*. However, I cautioned Sheri that in the US as in many Western culture a, payment/or gifting to elected representatives, government officials or diplomats for the provision of any services, however seemingly insignificant, would likely be frowned upon by US law enforcement agencies as it could be construed as a bribe in return for future favored treated or influence.

I make no excuse for Sheri's conduct. I believe, as she herself has admitted, that she knew what she was doing in bribing a UN official was wrong. However, I do believe there was a degree of cultural naivety in that she was not necessarily aware of the serious consequences of her actions or that in a Western context, her behavior would be viewed as criminal. In many respects, Sheri's overarching ambition was always to help and assist others and foster better understanding between East and West. It is unfortunate that Sheri's ambition perhaps overreached itself and she

made some poor choices, which have brought hurt and shame to those closest to her.

I know Sheri to be extremely remorseful for her wrongdoing. She has reflected on her actions and has come to a very real understanding of the damage and hurt she has wrought. In many ways she has already brought about her own punishment. Sheri's crime has received very significant coverage in the US, Australia (where she also resides) and in China. To have pleaded guilty to a charge of bribing a UN official effectively destroys her standing in the Chinese political and business community and ends her career as an effective lobbyist/influencer/networker in her own country. In China, where the concept of "face" is so crucially important, her actions have caused those closest to her, and those she cares most for - have by association with her - a diminished standing in their own community – i.e. they have lost face. For Sheri there is great shame in that.

More importantly, I believe Sheri now has much greater comprehension of why Western democracies focus their efforts on combatting bribery and corruption in order to protect our great institutions and maintain a level playing field for all. It is a hard lesson, and her conviction will send a very strong message to those who might be tempted to follow in her footsteps. But it is a lesson she has well learned.

I thank you Judge for taking the time to read my letter my reasoning might be taken into account during your consideration of the sentence which should be imposed on Sheri.

Sincerely,

**Bruce Dover**
Managing Director
DCI Media Group Ltd.

# 5. Letter of Ayman Faheem

Honorable Vernon S. Brodrick

United States district Court

Southern district of New York

United States Court House

40 Foley Square

New York ,NY 10007


Re: United States Vs Shiwei Yan

15Cr.706(VSP)

Dear Judge Brodrick ,

My name is Ayman Faheem , I am a US citizen that lived in the US for 25 years. Who loves this country much more than any other.

I do have a master degree in accounting from a Egypt, My country of origin.


I have had the pleasure of meeting Ms., Yan and her Lovely family about 2 years ago and I do see her almost every day . She is a resident at the building where I work as a concierge/Fire Safety Director for the past 18 years .


Ms., Yan has always been loving and caring in every aspect to every one , She is very kind , I know from our conversations before and after the day she got arrested of how willing she is to help everyone which makes her very useful to our society , It was a total surprise for me to learn about her incident that led to her arrest .

After her  release , I have seen it in her tears , How painful it was for her which was a bigger punishment than any court decision   , I know she pleaded guilty and all I am asking for is a 2nd chance , Yes your Honor, A 2nd chance for a person that learn from a mistake and I am sure that she will be a great, wonderful person to our society as she has always been .

Thank you for taking the time to read my letter.

respectfully ,

Ayman Faheem

# 6. Letter of Ian Hutchinson

Mosman NSW 2000
Australia

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

10 June 2016

**Re: United States v. Shiwei Yan**
      **15 Cr. 706 (VSB)**

Dear Judge Broderick:

I am writing to you as Chairman of the Global Sustainability Foundation (GSF) a role to which I was appointed on 21 March this year.

I joined the Board of GSF in July 2015 as I fully supported the vision and mission of the GSF and was keen to play my part in helping achieve that vision and mission. I believe then and continue to believe that the work of GSF would lead to a better world. I am confident that the other directors held similar views.

The mission of GSF is through a holistic approach to fostering sustainable development, the GSF aims to affirm the fundamental right of all people to live justly, harmoniously, and with dignity. By collaborating with a global network of actors and institutions with financial resources and a wealth of aggregated knowledge and information, the GSF endeavours to serve as a leading international charitable resource for sustainable development. This mission was to be accomplished by raising funds globally and becoming partners or entering into relationships or otherwise supporting the United Nations, Institutions such as the New York Academy of Science, the STEM Dream Public Education Foundation in China, The world Childhood Foundation and The Columbia School of Geography. I also believe that prior to Ms. Yan's arrest, the GSF was making steady progress in achieving its vision and mission.

All of those associated with the organization are concerned that GSF has suffered serious reputational damage brought about by the charges filled-against Sheri and Heidi Park.

Because of my belief in GSF and what it was trying to achieve I remained on as a director to try and ensure GSF would continue its good work.

I have been working on reconstituting the Board. The lawyer for GSF, John Buckman, has now joined as well as a respected investment advisor from New York, Raj Rashyap. We have other appointments in mind. These are people of integrity who have a similar belief as mine about the GSF and its future.

It is our strong intention to continue the good work of GSF and undertake further projects and ensure that GSF is a well run and organised entity observing its legal obligations and observing the highest principles of organizational governance.

I thank you for taking the time to read this letter.

Respectfully submitted,

Ian Hutchinson, LLB, FAICD

# 7. Letter of James A. Kelly

**James A. Kelly**

██████████████████████

**Honolulu, Hawaii 96821**

February 26, 2016

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse, 40 Foley Square
New York, NY 10007

Re:    <u>United States v. Shiwei Yan</u>
15 Cr. 706 (VSB)

Dear Judge Broderick:

This letter is in support of Ms. Shiwei Yan. It is a personal comment on the association of friendship that I have had over twenty years with Ms. Sheri Yan (as I have known Shiwei Yan).

I am a retired diplomat of the United States and former president (1994-2001) of an American "Think Tank," the Pacific Forum of the Center of Strategic and International Studies, based in Honolulu. In government, I was Assistant Secretary of State for East Asian and Pacific Affairs from 2001-2005, and was Special Assistant to President Ronald Reagan for National Security Affairs (East Asia and Pacific) from 1986 to 1989.

About 1988, I met Mr. Roger Uren, later to be the husband of Sheri Yan. He was a diplomat assigned to the Australian Embassy in Washington, D.C. With our countries' shared interests, Mr. Uren and I had many conversations. Roger Uren was and is highly respected for his insights, especially concerning China's remarkable rise.

I recall meeting Sheri Yan for the first time about 1993 in Canberra, Australia at the Uren's home. Roger Uren and Sheri and I had a long discussion of Asian affairs. We have had similar discussions on many occasions. Over many years, I appreciated Mr. Uren's expert views on China. He had published a significant book on Chinese history of the Mao Zedong era. Sheri Yan was present for these discussions and actively offered most perceptive views. She also offered warm and generous hospitality, usually at home, on many occasions.

When I was in government in 2001-2005, I had many occasions to have casual discussions with Sheri and Roger. I was heading the U.S. delegation in Beijing for the "Six-Party Talks," and Sheri and Roger's apartment happened to adjoin the hotel chosen by the U.S. Embassy for our delegation. The conversations with Sheri and Roger were social, and never consumed by issues.

Our meetings have continued over the years since then whenever our travels intersected. My late wife, Audrey, and, Sue, to whom I am now married, were present on some occasions. These meeting places included Beijing, Hong Kong, Washington, D.C., Canberra and Honolulu. I have always appreciated

Sheri's ideas, and have taken note of what I have heard of her life in China during the infamous 1966-1976 "Cultural Revolution." As I recall, Sheri's parents had been sent to the countryside, and, at age 11, she had sole responsibility in a huge city to find shelter and food for herself and a sibling. This I have seen to be a searing experience, sadly typical of too many Chinese children of that time.

I have not met with Sheri in New York, before or after her indictment, and I have not discussed the charges with her in specific terms.

From the conversations that we have had, I do believe that Sheri is deeply remorseful, and fully aware of the serious matters that she has acknowledged. I believe these acts are not consistent with the person I have known, and that she understands that her long record as a law-abiding person has been spoiled, and that she understands that her reputation must be rehabilitated. I perceive that she is determined to do that.

Thank you, Judge Broderick, for considering these remarks. I hope, as you consider this case under the law, that you can be as lenient as possible, so that Sheri can continue her rehabilitation, presumably away from the U.N. and New York.

Respectfully submitted,

James A. Kelly

# 8. Letter of Thomas Keneally

Thomas Keneally ████████████████████, Manly NSW 2095

AUSTRALIA

████████████████████████     ██████████

February 16 2016

Hon. Vernon S. Broderick

United States District Court

Southern District of New York

United States Courthouse

40 Foley Square

New York, NY 10007

Re: <u>United States v. Shiwei Yan</u>

15Cr.706(VSB)

Dear Judge Broderick,

I am submitting this letter to your consideration on behalf of Shiwei Yan, also known in the English-speaking world as Sheri Yan.

I am an Australian writer regularly published in the United States, at present by the Atria imprint of Simon and Schuster. I have a novel being published by them later this year, and a further novel ready for publication with them. My most famous work, *Schindler's List,* was picked up by Stephen Spielberg and was made into the film of that name. Most of my other works had far more modest destinies, although I am delighted to say that an Australian Prime Minister, Kevin Rudd, gave my biography of Lincoln to President Obama as a State Gift. I am now eighty but have previously held teaching posts at NYU and at University of California Irvine, where I held a Distinguished Professorship. I am an active member, even while living in Sydney, of the American Academy of Arts and Sciences, of which I am a Fellow.

I met Sheri through her husband, the former Australian diplomat, Chinese television executive and author, Roger Uren. When the Australian government opened diplomatic relations with China in the 1970s, it appointed an Australia-China Council to facilitate business, cultural, academic and scientific exchanges between the two countries. In the capacity of an appointed member of this council, I frequently visited China, met Roger, with whom I have a lifetime friendship, and then met, some

twenty-five or more years past, the warm, friendly and hospitable woman, Sheri, whom he had married.

Sheri seemed to me to be an exemplar of the new China. I would meet her father, the dazzling artist Yan Zhen, and her mother, both of them survivors of Mao's Cultural Revolution, enormously cultivated and talented people, Yan Zhen being also are poet who early in this century held out to his fellow countrymen, in a famous verse published in the *People's Daily*, the promise of a new China, of a more humane regime. Sheri's childhood, improbable by Western standards, involved a stint as a member of a Chinese army drama group, yet she had managed to graduate in journalism and become a successful young journalist in the United States.

By the time I first met her, Sheri was already a consultant on joint enterprises.. But she always had time for the arts, which did not seem so separate from business in her mind. She frequently insisted that my wife and I stay at the Yan-Uren apartment in Beijing, she generously organised receptions at which she introduced me to friends and colleagues, not least her renowned and venerated father.. The point I always remember is that, with me, there were no favours I could do her, but her generosity and interest was as unstinting as they could be to anyone. They included an utterly unsolicited gift of Chinese art for my seventieth birthday.

Whenever we spoke, the education and well-being of her daughter, Victoria, a charming kid and something of a prodigy, seemed always close to the surface of conversation. Whenever they travelled to Australia, Victoria was with Sheri at restaurants and public events, and was an urbane, exceptionally well-read and well-informed child. It was quite a shock to me to hear of the arrest and then the guilty plea of this amiable, gifted and cultivated woman, Sheri. But, when I heard that she had pleaded guilty to bribing a UN official, I immediately thought of the impact this has had on Victoria, and thus of the extent to which Sheri must bitterly regret the actions that have led to this sad pass. Victoria and Roger are the reasons above all that Sheri rues her actions leading up to this case, and those two people stand as reasons, too, that she will shun such actions in the future. Her deep remorse for what she has done is, her friends believe, a reason why she will never play that grievous game again. We hope that you will consider our pleas, and treat her with as much leniency as is possible.

Respectfully submitted

*Thomas Keneally*

Thomas Keneally

# 9. Letter of Zorica McCarthy

Zorica McCarthy

███████████████

Red Hill ACT 2603
Australia

18 March 2016

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re: <u>United States v. Shiwei Yan</u>
15 Cr. 706 (VSB)

Dear Judge Broderick:

It is with pleasure that I write in support of Ms Shiwei (Sheri) Yan.

I am a retired Australian foreign service officer. I served as Australian High Commissioner (Ambassador from one Commonwealth county to another) in Pakistan from 2004 to 2009, and Australian Ambassador to Spain from 2010 to 2013. I also held non-resident ambassadorial accreditations to Afghanistan (2004-2006) and to Andorra and Equatorial Guinea (2010-2013). The Spanish Government has conferred on me the Great Cross of Naval Merit for my support to the growing relationship between the Australian and Spanish navies and the respective defense industries.

I first met Sheri in 1991, when I was posted to the Australian Embassy in Washington DC. The position I held in the embassy involved liaison with the United States intelligence community, but Sheri never displayed any untoward curiosity about my work.

I was initially drawn to Sheri by her gentleness, innate goodness. and generosity of spirit. Over time I also came to know her parents, who had been imprisoned during the Cultural Revolution in China because of their insistence on freedom of expression. It was clear to me that this was a good – and very interesting - family.

I witnessed a particularly endearing example of Sheri's true nature at the reception that followed her wedding in Washington DC in 1995. Among the guests was a very elderly lady for whom Sheri had worked previously as personal carer. When the wedding cake was served, Sheri, in full bridal gown, knelt down and fed a serving of cake to her friend and former employer, who was confined to a wheelchair.

Sheri and I also met numerous times upon my return to Australia in 1995, as she had settled in Canberra with her husband, who has been a friend since we both joined the Australian foreign service in 1974. She was a devoted and loving daughter, wife and mother. She was always warm and caring to others, including to my daughters, who adored her. My elder daughter, who is currently living in New York, is in contact with Sheri and still has great affection for her.

Sheri always looked for the best in people; I do not recall her ever engaging in disparaging conversations about third parties.

At that time, I had temporarily left the foreign service and was working in the Australian intelligence community – as before, Sheri never asked about the substance of my work. Indeed, in all the years I have known her, I do not believe there was a single occasion where her speech or actions were not impeccable.

I have stayed in touch with Sheri over the years, though our respective peripatetic professions have precluded frequent encounters. We last met when I visited Beijing in about 2007. I had not seen her for some time and was struck by the fact that time had not affected her many positive qualities: consideration for others, warmth, candor, gentleness, and generosity of spirit. On the basis of my observations over more than twenty years, I have no hesitation in describing Sheri as a quintessentially good person of great personal integrity.

Since charges were brought against Sheri, I have met with her husband and daughter, and have had a brief telephone conversation and an email exchange with Sheri. I have not discussed with her the substance of the charges but understand that she is extremely remorseful.

My purpose in writing is to express my view that Sheri is a woman of exceptional character and integrity, and to implore you –respectfully - to show leniency in your sentencing deliberations. Sheri brings light and joy into the world for her family and many friends and I hope that she will continue to be in a position to do so.

I thank you for considering my comments and hope that I have contributed to your appreciation of Sheri's many fine qualities (in fact, I once asked if there was any virtue with which she had not been blessed!).


Respectfully submitted.


Zorica McCarthy

# 10. Letter of John McDonnell

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square

New York, NY 10007

Re:     United States v. Shiwei Yan
        15 Cr. 706 (VSB)

Dear Judge Broderick:

My name is John McDonnell and I am the editor of Inside Canberra a newsletter that is published inside Parliament House in Canberra. Ms Yan's husband Roger Uren is a regular contributor to the newsletter. He writes on international relations in the Asia Pacific region.

Prior to becoming a journalist, I had a long career in the public and private sectors. My professional training was as a trade lawyer and I was trade adviser to two Australian Prime Minister's, Malcolm Fraser and Bob Hawke. During a visit to China, Mr Hawke learned that the Chinese government wanted to join the GATT, the predecessor to the World Trade Organisation. He offered to lend me to the Chinese government to advise them on their entry into the organisation.

I moved to China in 1986 and worked with the Chinese government for three years. In that time I was embedded in a Chinese department of more than 1.5 million employees, I helped draft the legal instruments of Chinese accession to the WTO, redrafted over 2000 Chinese trade laws, trained several thousand Chinese lawyers and officials and assisted the Chinese Government with international negotiations. During my time in China I worked with two Chinese premiers Zhao Ziyang and then future premier Zhu Rongji. In the three years I was there, I had a unique opportunity to observe Chinese government and society with all its unique tensions and struggle to modernise. I have had dealings with China at both an official and commercial level over the last thirty years.

I met Sheri Yan and Roger Uren through a mutual acquaintance approximately five years ago. Because of my engagement with China I was initially invited to functions at their house. These functions often involved senior Australian political and business figures meeting with Chinese officials, academics and business figures. In my observation Ms Yan was held in high regard by politicians from both the major political parties in Australia, business figures and senior Australian officials.

I have also observed her at work in China when I visited that country and accompanied her to meetings in various provinces. In the meetings that occurred Ms Yan always maintained the

highest standards of probity. I noticed that she worked diligently on helping to overcome cultural differences between Chinese and foreigners attending meetings but rarely participated in commercial transactions in which she seemed to take very little interest.

Approximately two years ago, Ms Yan asked me to work with her, on a voluntary basis, in establishing the Australian arm of the Global Sustainability Foundation. The objective was to establish it as an Australian not-for-profit organisation. Under Australian law directors and promotors of not-for-profits are precluded from obtaining benefits from these organisations other than modest attendance fees for meetings. The Australian arm of GSF was to provide education services to remote indigenous communities and to encourage exchanges between Australia and Asia. As an adviser I was provided with operational and governance guidelines from GSF in New York. As far as I could see, these directives required the highest standards of probity from the organisation.

My observation of Ms Yan is that she is an expert in public relations who wants to apply her skills for humanitarian purposes. To this end she believed that it was her vocation to mobilise funds from philanthropic sources for causes she believed in. One of these was to enhance the role of the United Nations in the international community as an agency for social and economic development, a cause which I personally believed was naïve. I have never observed any evidence that she was engaging in these activities for ulterior motives either political or commercial.

That being said, there is no doubt that China feels isolated within the international community and that it engages in 'soft diplomacy'. This is undoubtedly one motive for Chinese philanthropy and it is impossible to know whether this is a motive in the case of any Chinese donation to an international organisation.

I hope this background is useful for your deliberations.

Respectfully submitted

John McDonnell
Editor, Inside Canberra,
Parliament House, Canberra, ACT,
Australia, 2000

# 11. Letter of Isobel (Zoe) Morrison

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re:    United States v. Shiwei Yan
15 Cr. 706 (VSB)

Dear Judge Broderick:

My name is Zoe Morrison, and I am a student at Scripps College in California. I moved with my family to Beijing when I was 2 years old, and left after I graduated from high school. I attended the same international school as Sheri Yan's daughter Victoria, and we have been best friends since I was 12. I grew up staying at Sheri's house, and Victoria grew up coming to mine. Victoria is still my best friend and I continue to see her and Sheri whenever I can.

Sheri is a mother figure to me, and a friend, and a role model. Victoria and I are sisters at heart, and she is always there for me when I need support in my life, just as I am there for her when she needs support. The day I turned sixteen, my baby sister and mother had to move back virtually overnight to the US after my sister was diagnosed with advanced leukemia and was medical-evacuated out of China. All at once, everything in my life changed. Victoria, Roger and Sheri offered the greatest support to me during this time. I remember spending many nights at their apartment in Beijing with Victoria's grandparents and Sheri. We would eat noodles, and Sheri would urge us to go get ice cream afterwards, and help us plan our days out exploring the city – all ways to keep my life feeling normal. She opened her house to me, offering me a space that was familial and loving and comfortable, during a time when nothing really was that. For this support I will always be grateful. (Four and a half years later my sister has recovered and is looking forward to a healthy future.)

When I turned sixteen, Sheri and Victoria invited me to stay with them in Los Angeles so we could attend an art show that was given by one of our favorite writers/artists. We stayed in a hotel, and Sheri walked with us to the show. All of a sudden we saw the artist we so admired, and Sheri urged us to talk to her. "Go, talk with her! Take a picture with her!" Victoria and I were too embarrassed, to teenaged, to want to ask her for a picture, but finally at Sheri's urging we did it. Sheri took the picture, we had a great conversation with the artist, and the three of us ran, giddy, and caught a taxi. I remember distinctly how we all hugged in the car, so happy with our conversation and the magic feeling that comes from meeting someone you admire.

This past winter, I visited Sheri and Victoria in New York. The urge to see them was so strong, and getting off the taxi in the cold air and finally seeing Victoria, and then, three minutes later, Sheri, was electric. We had dinner, and since I had come from California and was continuing on to India, I had not brought a large coat. Sheri gave me hers, and she gave me a sweater, and a NYC hat, and a bag. I was instantly enveloped in her warmth, her generosity, the way in which she perceives me as one of hers simply because she loves Victoria and Victoria loves me. I have seen Sheri and Victoria together, and they have a bond that transcends simply mother-daughter relationship. Sheri is Victoria's (other) best friend: and the love that Sheri transmits – in Beijing, in Canberra, in NYC, in LA – is so strong that I can easily feel it even when we are not in the same physical space.

This winter, she expressed such heartbreaking remorse. Her heart, she said, was hurting, not for herself but for everyone around her who was affected. Victoria is still in college and is starting her adult life. The knowledge that she will not be in Victoria's life for a long period is the cause of great pain to Sheri.

I have learned much from Sheri, including the strength of love, how it becomes a tangible emotion when you are strong and vulnerable enough. When I visited them in New York several months ago, Sheri talked about her case a lot, and she often teared up. Much as her love is easily transmitted, so is her sadness and remorse. She seems to know that what was done was done, that looking into the past with bitterness does nothing but poison your mindset. Her focus is on her daughter, and on a positive future.

Thank you very much for taking the time to read this letter, and for honoring the memories which I have shared. I deeply love Sheri, and I deeply love Victoria. The two of them are some of the most important people in my life, and my family's life. Sheri stepped in for me at a moment of crisis in my family's life – I hope I can in some way do the same for her.

I ask for leniency and mercy in your sentencing of Sheri. She is strongly aware of the pain she has caused; and I believe her when she says that her heart breaks whenever she thinks of it. Sheri is strong, and this strength means that she is able to admit to herself that she made mistakes. I know that Sheri is loved strongly by her family and friends. Every day that she is away is a day that she is not creating love and warmth for all those in her vicinity. Victoria has suffered deeply in the past few months, worrying about her mother and her grandparents, who are very old and living in China. The sooner Sheri can be back with them, the better. Thank you again for your time.

Respectfully submitted,
Isobel (Zoe) Morrison
Isobel Morrison

# 12. Letter of Peter Norton



**NORTON**
**· Family Office ·**

225 Arizona Avenue· Suite 350
Santa Monica· California· 90401
telephone: 310-576-7700
fax: 310-576-7701

February 22, 2016

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   **United States v. Shiwei Yan**
       **15 Cr. 706 (VSB)**

Dear Judge Broderick:

I am writing this in support of Sheri (Shiwei) Yan.

To introduce myself:

> My name is Peter Frederick Norton. I am a US Citizen, honorably discharged from military service in the US Army during the Vietnam war. I have held a Secret clearance and I have been invited to give a keynote address at the C.I.A. headquarters.
>
> I am a retired entrepreneur and you or your staff may know of me as the person behind the Norton Anti-Virus programs which protect personal computers.
>
> I currently serve on the boards of trustees of several well-regarded institutions, including the Museum of Modern Art, in New York City; the California Institute of Technology; the Los Angeles County Museum of Art; and Reed College, in Portland, Oregon.
>
> I have been an investor in a number of start-up enterprises, among them eChina Cash, a US-based company doing business in China, which is where I came to know Sheri Yan.

I have known Sheri Yan for well over a dozen years, both as a business associate and as a personal friend. I have known her to be a person of integrity who acts honorably and correctly in complex situations where it is not always possible to know the full scope of what is going on around her.

It may be of interest or use to the Court to know that Sheri was a Chinese citizen during the extremely oppressive period of China's "Cultural Revolution" during which her parents were exiled in degrading circumstances.

From her own personal experience during the Cultural Revolution I know that Sheri is capable of rehabilitate herself and am confident that with the Court's encouragement she will be able to rehabilitate herself from her current circumstances. She is a smart, capable and healthy person who will contribute to the on-going success of our Nation if she is given the opportunity.

I therefore respectfully request that the fullest appropriate leniency be shown to Sheri in her sentencing.

Respectfully submitted,

*Peter Norton*

Peter Norton